IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 CR 117 |
| vs. | ) | Honorable John Z. Lee |
| | ) | |
| DWAYNE DANIELS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM**
**IN SUPPORT OF HIS MOTION FOR A *FRANKS* HEARING**

**Table of Contents**

I. Question Presented---------------------------------------------------------------------------- 1

II. Background-------------------------------------------------------------------------------------- 2

III. Relevant Legal Principles------------------------------------------------------------------ 6

IV. Application of the Relevant Legal Principles Here--------------------------- 7

V. Conclusion--------------------------------------------------------------------------------------- 8

Exhibits

A. Search Warrant

B. Affidavit Used to Obtain Search Warrant

C. Discovery Materials Relating to Bank Witnesses

For the reasons set forth below, the Court should hold a *Franks*[1] hearing concerning the affidavit used to obtain a search-and-seizure warrant authorizing federal agents to take a buccal swab and hair sample from Dwayne Daniels. This Memorandum proceeds as follows:

    (1) question presented (Part I),

    (2) background (Part II),

    (3) relevant legal principles (Part III),

    (4) application of the relevant legal principles here (Part IV), and

    (5) conclusion (Part V).

**I.    Question Presented**

A federal agent obtained a search-and-seizure warrant authorizing him to take a buccal swab and hair sample from Dwayne Daniels. The warrant was obtained with an affidavit that stated the following:

    (1) shortly after this bank robbery, police officers "recovered several items" a couple blocks away that were "wor[n] or used to rob the bank," "according to" three interviewed bank employees; and

    (2) one of those items—"a black cap with eyeholes cut into it"—had been "preliminar[il]y" connected to Dwayne Davis through FBI DNA testing.

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

1

Not one of the three interviewed bank employees said that a "black cap" was "wor[n] or used to rob the bank," according to the government's discovery materials.

The question is this:

> Under these circumstances, should the Court hold a *Franks* hearing?

## II. Background

1. On January 14, 2015, FBI Agent Chad Piontek obtained a Search and Seizure Warrant ("Warrant") from Magistrate Judge Jeffrey T. Gilbert. The Warrant authorized agents to obtain a buccal swab and hair sample from Dwayne Daniels. Agent Piontek executed the warrant the following day. *See* Ex. A, Search and Seizure Warrant (Govt. Bates 56-57).

2. Agent Piontek obtained the Warrant with an affidavit that stated in part as follows:

> (1) "[A] buccal swab is needed from DWAYNE V. DANIELS so that further testing may be done on DNA obtained from physical evidence recovered in this investigation, and compared to the specimen provided by DWAYNE V. DANIELS." Ex. B, Piontek Affidavit, at ¶ 5 (Govt. Bates 62).
>
> (2) The swab was needed in connection with the investigation of a robbery of North Shore Trust and Savings Bank in Waukegan, Illinois, on November 15, 2012. *See id.* at ¶

6 (Govt. Bates 62). Shortly after the robbery, Waukegan Police Officers "recovered several items that, according to" three interviewed bank employees and "corroborated by video surveillance footage from the bank," were "wor[n] or used to rob the bank," "[s]pecifically," "a blue, two-toned hooded jacket, two white gloves, a black cap with eyeholes cut into it, a Halloween mask, and a plastic toy gun partially wrapped in tape." *Id*. at ¶ 8 (Govt. Bates 63). These items were "recovered" "approximately two blocks northeast of the bank." *Id*.

(3) "The FBI Laboratory ha[d] examined some of the evidence recovered by the Waukegan Police Department." *Id*. at ¶ 9 (Govt. Bates 63). That examination, coupled with "[a] search of the FBI's Combined DNA Index System ('CODIS'), which contains DNA profiles contributed by federal, state, and local forensic laboratories, returned a preliminary match between known DNA for DWAYNE V. DANIELS and the DNA obtained" from one of the "recovered" items—"the cap." *Id*. at 9 (Govt. Bates 63-64).

3. Government discovery materials do not support the Affidavit's representation that, "according to" the three interviewed bank employees, "a black cap with eyeholes cut into it" was "wor[n] or used to rob the bank." *Id*.

3

at ¶ 8 (Govt. Bates 63). The discovery reflects, instead, that none of the interviewed bank employees—teller ▆▆▆▆▆ ("▆▆▆"),[2] teller ▆▆▆

---

[2] According to the discovery materials, this is what ▆▆▆ told the Waukegan police about the robber's appearance:

> (1) "[T]he offender was wearing a rubber type mask which appeared to be demon or goblin in appearance." "[T]he mask had the colors green, black and some other color on the mask and the mask had a thin opening around the eyes." Ex. C, Discovery Materials, Govt. Bates 30 (Waukegan Police report) at ¶ 3.
>
> (2) "[T]he offender had some type of gloves on. She believe's [sic] to be black or gray." Id., ¶ 4.
>
> (3) "[T]he offender was wearing a blue or black coat with the hood over his head, a rubber type mask over his face which had green and black on the mask, the offender had brown eyes and observed the neck skin of the offender to be dark in skin tone, approximately 5'03-5'05 in height, approximately 140 in weight, appeared to be thin build." "[T]he offender's coat was approximately ¾'s in length." Id., ¶ 7.

This is what ▆▆▆ said in a written statement provided to the Waukegan police:

> (1) "The robber was wearing a blue hooded jacket or sweater he had a green mask that looked like some kind of demon or monster or goblin it may [have] had black on it. His eyes were dark brown and he had dark brown skin that peeked under his mask at his neckline. He had dark pants they could have been black. He also wore a pair of gloves that could have been black or gray." Ex. C, Discovery Materials, Gov. Bates 40 (Witness Statement), ¶ 1.

And this is what ▆▆▆ told the FBI:

> (1) "[A] male, approximately 5' 3", wearing a blue hooded jacket or sweater, green and black mask, and gloves." Ex. C, Discovery Materials, Gov. Bates 45 (FBI Report), ¶ 5.

4

 ("▆▆▆"),[3] assistant branch manager ▆▆▆▆▆▆ ("▆▆▆▆")[4]

—ever said that the person who robbed the bank wore a "black cap." Id.

---

[3] According to the discovery materials, this is what ▆▆▆ told the Waukegan police about the robber's appearance:

    (1) "[A] subject wearing a blue coat with the hood up, wearing a some type of a white Halloween mask." Ex. C, Discovery Materials, Gov. Bates 35 (Waukegan Police report), last para.

    (2) "[A]pproximately 5'02-5'05 and weighing approximately 130 – 150 lbs." Id.

    (3) She identified (a) "a blue Jacket" as "the jacket that the subject was wearing," and (b) "a small gun wrapped in black tape" as "the gun the subject had." She said she "could not be positive the subject was wearing that mask," upon being shown "a black, green, white mask." She said she "could not be positive of the type of gloves the subject was wearing," upon being shown "White/black construction type gloves." Upon being shown a "Santa Hat," she "stated that she did not observe a Santa Hat." And upon being shown a *"black nylon type doo rag"* (referred to elsewhere as a "cap"), she *"stated that she did not observe this item."* Ex. C, Discovery Materials, Gov. Bates 36 (Waukegan Police report), first full para. (emphasis added).

In a written statement provided to the Waukegan police, ▆▆▆ said nothing about the robber's appearance. See Ex. C, Discovery Materials, Gov. Bates 42 (written statement).

    This is what ▆▆▆ told the FBI:

    (1) "[A] male wearing a blue jacket and a mask." Ex. C, Discovery Materials, Gov. Bates 44 (FBI Report), ¶ 4.

[4] According to the discovery materials, this is what ▆▆▆ told the Waukegan police about the robber's appearance:

    (1) Upon being shown items "recovered during the canvass," ▆▆▆ stated that "she was positive that the subject was wearing the blue jacket, was holding the gun, was wearing the mask and gloves." She "stated that she did not observe a Santa Hat, *nor did she observe a black nylon doo rag*" (elsewhere referred to as a "cap"). Ex. C, Discovery Materials, Gov. Bates 36 (Waukegan Police report), second full para. (emphasis added). [cont.]

## III. Relevant Legal Principles

1. Under *Franks v. Delaware*, 438 U.S. 154 (1978), evidence obtained with a search warrant "must be suppressed if the defendant can show by a preponderance of the evidence that (1) the affidavit contained materially false statements or omissions; (2) these false statements and omission were made with deliberate or reckless disregard for the truth; and (3) these false statements or omissions were necessary to the finding of probable cause." Michael D. Monico & Barry A. Spevack, *Federal Criminal Practice: A Seventh Circuit Handbook* § 9 (2015 ed.) (citing *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013)).

2. To obtain "a *Franks* hearing, a defendant must make 'a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" Monico & Spevack, *supra*, § 9 (quoting *Franks*, 438 U.S. at

---

[cont.]

(2) "[A] subject walking in wearing a blue coat with a hood pulled up and a mask with black and green marks." *Id.* at fifth full para.

In a written statement provided to the Waukegan police, ███████ said nothing about the robber's appearance. *See* Ex. C, Discovery Materials, Gov. Bates 38 (written statement).

This is what ███████ told the FBI:

(1) "5'3"-5'5" male wearing a dark blue thick coat, gloves, and a Halloween mask, possibly green and cream in color." Ex. C, Discovery Materials, Gov. Bates 46 (FBI Report), ¶ 5.

6

155-56, and also citing *United States v. Currie*, 739 F.3d 960, 963 (7th Cir. 2014)). In addition, a "defendant must show that the false statement was essential" to the affidavit's "establishment of probable cause." *Id.*, § 9 (citing *Franks*, 438 U.S. at 155-56; *United States v. Amerson*, 185 F.3d 676, 688 (7th Cir. 1999)).

IV.  **Application of the Relevant Legal Principles Here**

1. Applying the foregoing legal principles to the foregoing facts compels the conclusion, we submit, that the Court should hold a *Franks* hearing. According to the discovery materials, the Affidavit's representation that three interviewed bank employees said a "black cap" was "wor[n] or used to rob the bank" was false. *See* Part II, *supra*. An inference that this misrepresentation was made intentionally, knowingly, or recklessly is inescapable. Further, the importance of this misrepresentation to the Affidavit's establishment of probable cause is difficult to overstate. If one removes this factual misrepresentation from the Affidavit, along with the related information concerning the FBI's "preliminary" DNA testing of that item, the Affidavit's claim of probable cause collapses.

2. The following syllogism, which the Affidavit implicitly relies upon, shows the importance of this factual misrepresentation:

> (1) *Major premise*: Probable cause for obtaining a buccal swab and hair sample is established where an item of evidence identified by eyewitnesses as "worn or used" in

7

committing a crime has been connected to the target of the requested warrant through "preliminary" FBI DNA testing.

(2) *Minor premise*: "Preliminary" FBI DNA testing has connected an item identified by three eyewitnesses as "worn or used" in this bank robbery to the target of the requested warrant.

(3) *Conclusion*: Therefore, probable cause exists for issuance of a search-and-seizure warrant for taking a buccal swab and hair sample from the target of the requested warrant.

The flaw with this logic is plain: the minor premise, according to the discovery, is false.

**V.     Conclusion**

For the foregoing reasons, the Court should hold a *Franks* hearing.

Respectfully submitted,

s/Richard H. McLeese
Lawyer for Dwayne Daniels

Richard H. McLeese
53 W. Jackson Blvd., Suite 1615
Chicago, IL 60604
312/492-7273
312/268-6291 (fax)
rmcleeselaw@aol.com

**CERTIFICATE OF SERVICE**

The undersigned lawyer hereby certifies that service of the above document was made through the district court's ECF system to opposing counsel on October 5, 2016.

                                              s/Richard H. McLeese
                                              Lawyer for Dwayne Daniels